UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

===============================================

Shawn C. Clark,

$\qquad$ Plaintiff,

v.

Commissioner of Social Security,

$\qquad$ Defendant.

===============================================

**Decision and Order**

19-CV-170 HBS
(Consent)

## I.   INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  The Court

has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in

brackets), and familiarity is presumed.  This case comes before the Court on cross-motions for

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 12,

14.)  In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the

"Commissioner") that he was not entitled to Disability Insurance Benefits under Title II, or

Supplemental Security Income under Title XVI, of the Social Security Act.  The Court has deemed

the motions submitted on papers under Rule 78(b).

## II.   DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry.  We

must first decide whether HHS applied the correct legal principles in making the determination.  We

must then decide whether the determination is supported by substantial evidence."  *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted).  When a district

court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  Substantial evidence is defined as "'more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts.  *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994).  When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000).  In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998).  The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion.  *Id.*  "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*"  *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

2

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  42 U.S.C. §§ 423(d) (2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment.  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."  *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends.  20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, the ALJ has an affirmative duty to develop the record.  *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

physical and mental demands of the work done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).
The ALJ must then determine the individual's ability to return to past relevant work given the RFC.
*Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges the Commissioner's final determination on the basis of new evidence.
The ALJ found that plaintiff had the severe impairments of "disorders of the right hand;
degenerative disc disease; and obesity." [17.]  The ALJ did not consider plaintiff's bipolar disorder
and depression to be a severe impairment because he reported doing well to providers; had good
mental health status; and often denied psychiatric symptoms.  [18.]  The ALJ went on to find that
plaintiff had the RFC for light work with some exertional limitations.  [21.]  The ALJ's decision
issued on May 2, 2018, following a hearing that occurred on September 7, 2017 and February 8,
2018.  Following the ALJ's decision, plaintiff submitted to the Appeals Council a medical source
statement from Sanjay Gupta, M.D. at Mid-Erie Counseling, dated May 10, 2018.  [55.]
Accompanying the medical source statement were clinical notes from Dr. Gupta from 2014 to 2018.
[62–82.]  The Appeals Council did not consider the new evidence because it believed that the
evidence "does not show a reasonable probability that it would change the outcome of the
decision."  [7.]  Plaintiff now argues that the Appeals Council was mistaken:

> This case is remarkably similar to [*Lesterhuis v. Colvin*, 805 F.3d 83 (2d Cir.
> 2015)].  In that case, a treating source statement was submitted to the Appeals
> Council.  *Lesterhuis*, 805 F.3d at 88.  The Second Circuit first noted that, generally
> speaking, the Commissioner's regulations directed that this opinion be entitled to
> controlling weight.  *Id.*  Second, the Court noted that if the opinion were assigned
> controlling weight, that it established a need to be absent from work at least four
> days per month, which uncontroverted vocational expert testimony established
> would prevent competitive employment.  *Id.*  Third, while portions of the opinion
> could be said to be in conflict with the other medical opinions considered by the
> ALJ, there was no opinion that directly contradicted the need to be absent.  *Id.*
>
> Here too, Dr. Gupta's opinion was generally entitled to controlling weight.
> Second, it would clearly establish a need to be absent for four days of work per
> month, among other things.  Uncontroverted vocational expert testimony indicated

that this was disabling.  *See* Tr. 123 (employers demand 90% attendance rates).  And finally, neither Dr. Ransom, nor Dr. Marks specifically stated that Plaintiff would not need to be absent for four days per month, and thus do not directly contradict Dr. Gupta's opinion.  *See* Tr. 143, 422.  As such, *Lesterhuis* is controlling and remand is required.

(Dkt. No. 12-1 at 11–12.)  The Commissioner responds by citing other clinical records from Mid-

Erie Counseling that were submitted to the ALJ and by distinguishing plaintiff's principal case:

> Plaintiff specifically relies on Dr. Gupta's opinion that Plaintiff would miss at least four days of work per month because of his mental impairments to argue that the opinion is contrary to the ALJ's decision because missing that many days would result in no available jobs (Tr. 8-12).  Dr. Gupta's opinion, however, is contrary to the other evidence that was before the ALJ (Tr. 51-55, 475-78, 682-737).  The ALJ had treatment records from Dr. Gupta from Mid-Erie Counseling & Treatment Services that showed Plaintiff was doing really well with his bipolar and depression (Tr. 475-78).  There is one notation from Dr. Gupta in June 2015 that Plaintiff had missed a couple of appointments, but at that particular appointment, he was doing well (Tr. 477).  The notes indicate Plaintiff was also compliant with his medications (T. 475-78).

> Plaintiff also attended psychotherapy counseling at Mid-Erie and the visit summaries suggest Plaintiff was doing well with the therapy and counseling (Tr. 682, 685, 686, 689-90, 707-08, 717, 727).  There is mention of a couple of missed appointments over the three or four year treatment history, but nothing to support an opinion that Plaintiff would miss more than four days of work per month both because he did not miss that many treatment appointments and because the treatment, therapy and medication were helping (Tr. 682, 685-86, 689-90, 707-08, 717, 728).  The remainder of the record is related to Plaintiff's physical condition, including complaints about his hand and his back.  While some of those notes indicate a review of Plaintiff's mental condition, they generally show no issues (Tr. 436).  Even the consultative psychological examiner noted a normal mental status exam and no indication in the report of a need for excessive absences from work (Tr. 420-23).

> This case is factually distinguishable from *Lesterhuis* because there the Second Circuit reasoned that, along with a few other reasons, the ALJ had before him another opinion that was consistent with missing four days a month, so the additional evidence to the Appeals Council in *Lesterhuis* might have been given more weight by the ALJ and possibly could have changed the outcome.  *Lesterhuis v. Colvin*, 805 F.3d 83 (2d Cir. 2015).  Here, no such other opinion exists.  The mental health evidence available to the ALJ paints a picture that is the opposite of that included in the check-mark form completed by Dr. Gupta for the Appeals Council.  As noted above the evidence before the ALJ showed some absences over a three or four year period, but the treatment notes reflect an improving condition and medications that

5

were effective in controlling and improving Plaintiff's mental health.  A treating doctor's opinion does not receive controlling weight just because it is from a treating physician.  Instead, the ALJ considers whether the opinion is consistent with the other evidence.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Here, Dr. Gupta's opinion is clearly not consistent with any of the other evidence available to the ALJ about Plaintiff's mental health.  Thus, the Appeals Council properly determined there was no probability that the opinion would change the outcome.

(Dkt. No. 14-1 at 7–8.)

The Commissioner has the better argument.  The Commissioner, through the Appeals Council or otherwise, has the ability to review or to reopen a claim based on new and material evidence.  *See* 42 U.S.C. § 405(g); 20 C.F.R §§ 404.970(a)(5), 416.1470(a)(5), 404.988(b), 416.1488(b), 404.989(a)(1), 416.1489(a)(1).  "The Social Security Act provides that a court may order the Secretary to consider additional evidence, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.  Thus, an appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.  The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently.  Finally, claimant must show (3) good cause for her failure to present the evidence earlier."  *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotation marks and citations omitted).  Here, the ALJ already had clinical notes from Dr. Gupta and Mid-Erie Counseling noting that plaintiff was doing well and was denying symptoms as of early 2016.  [480.]  Plaintiff was "compliant with his medicines" and had a bright affect with an organized thought process and no psychosis.  [480.]  Dr. Gupta made similar assessments in earlier clinical notes from 2015 and 2014.  [*E.g.*, 485 ("Speech is clear, coherent and normal rate.  Mood is neutral.  Affect is appropriate to the mood.  Full range, organized thought

6

process. No psychosis.").] The new clinical notes by Dr. Gupta that were submitted to the Appeals Council continued the same mental status assessment through December 2017. [62 ("The patient has been compliant with his medicines . . . . Speech is clear, coherent, and normal rate. Mood is neutral. Affect is appropriate to the mood. Organized thought process. No psychosis.").] Even the May 10, 2018 medical source statement from Dr. Gupta acknowledges that plaintiff was alert and oriented with fair judgment and insight. [56.] Yet plaintiff would overturn the Commissioner's final determination based on unexplained checkmarks that he would miss more than four days of work per month and that he was "seriously limited" in numerous mental abilities and aptitudes. [58–60.] *See Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (standardized forms can be "only marginally useful for purposes of creating a meaningful and reviewable factual record"); *Shipp v. Colvin*, No. 16-CV-919 HBS, 2018 WL 4870748, at *3 (W.D.N.Y. Oct. 9, 2018) ("The remainder of the checkmarks in the questionnaire come with no explanation and are too conclusory to oppose a consistent medical record."). In the face of clinical notes that are cumulative of clinical notes that already were before the ALJ, the unexplained checkmarks do not suffice to satisfy the materiality requirement for new evidence. With respect to the third prong of *Tirado* requiring good cause, the ALJ at the hearing gave counsel 10 days either to obtain the missing records from Mid-Erie Counseling or to provide an explanation about why they still were unavailable. [90.] The record does not appear to contain any attempt by plaintiff's counsel to seek extensions of time or to explain why acquiring the new records took so long. Plaintiff thus has not established good cause for the failure to present the evidence earlier.

Plaintiff's principal case does not change the above analysis. As the Commissioner has noted, the holding in *Lesterhuis v. Colvin*, 805 F.3d 83 (2d Cir. 2015), essentially rests on one key sentence: "We agree that, on the facts of this case, the ALJ's decision was not supported by

substantial evidence because the new evidence contradicted the ALJ's conclusion in important respects." *Id.* at 88 (citation omitted).  No contradiction is present here.  As the Court noted above, Dr. Gupta consistently assessed plaintiff as having stable mental health with organized thought and good medication compliance from 2014 through the time of the new evidence in 2018.

   In the absence of genuine new evidence, plaintiff's arguments amount to a disagreement with the ALJ over how the factual information in the record led to the crafting of the RFC. Resolving factual disagreements is where the substantial-evidence rule has maximum effect.  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (internal quotation marks and citation omitted); *see also Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("We examine evidence both supporting and detracting from the decision, and we cannot reverse the decision merely because there exists substantial evidence supporting a different outcome.") (citation omitted); *Henderson v. Comm'r*, No. 18-CV-00072, 2019 WL 3237343, at *5 (W.D.N.Y. July 18, 2019) (affirming ALJ resolution of RFC where treating physician records supported exertional limits despite other evidence in the record).  Under these circumstances, the Court is obligated to affirm the Commissioner's final determination regardless of how it might have viewed the evidence in the first instance.

III.    **CONCLUSION**

The Commissioner's final determination was supported by substantial evidence.  For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 14) and denies plaintiff's cross-motion (Dkt. No. 12).

The Clerk of the Court is directed to close the case.

SO ORDERED.

_____/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: July 31, 2020

9